IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**REGINALD DUNAHUE**                                                                     **PLAINTIFF**
ADC #106911

V.                           Case No. 4:23-cv-00504-BBM

**CURRY BRANHAM**
Lt, Cummins Unit, ADC, *et al*.                                                       **DEFENDANTS**

# **ORDER**[1]

## I.     INTRODUCTION

On August 8, 2022, Plaintiff Reginald Dunahue ("Dunahue"), then incarcerated at the Tucker Max Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was incarcerated at the Cummins Unit of the ADC.[2] (Doc. 2); *see Dunahue v. Reed et al*, 4:22-CV-00710-BRW-BBM, (ECF No. 2).

After the Court screened the Complaint in accordance with the Prison Litigation Reform Act ("PLRA"), Dunahue was allowed to proceed with conditions-of-confinement claims against Lieutenant Curry Branham ("Branham"), Lieutenant Avery ("Avery"), Warden Culclager ("Culclager"), Captain Starks ("Starks"), and Deputy Warden Jeremy Andrews ("Andrews") (collectively, "Defendants"). (Doc. 1 at 2). Specifically, Dunahue

---

[1] By written consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment, in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. (Doc. 34).

[2] This case was originally joined with *Dunahue v. Reed et al.*, 4:22-CV-00710-BRW-BBM. It was severed by Court Order on May 31, 2023. (Doc. 1).

alleges that, on June 7, 2020,³ Branham and Avery "locked [Dunahue] in a refrigerator[-]sized shower stall . . . for 24 hours straight" and forced him to use the restroom and eat his meals within that confined space. (Doc. 2 at 8). Dunahue was then transferred to behavior control for three weeks, where he was deprived of clothes, a mattress, hygiene items, and mail. *Id.* Culclager, Starks, and Andrews were aware of the alleged unconstitutional conditions but failed to take any corrective action. *Id.* at 8, 18–19

On April 25, 2024, Defendants filed a Motion for Partial Summary Judgment, Statement of Undisputed Facts, and Brief in Support, arguing that Dunahue failed to exhaust his administrative remedies. (Docs. 38–40). Dunahue filed a series of Responses, (Doc. 42, 51, 52-1), and Defendants replied, (Doc. 49).⁴ The issues are thus joined and ready for consideration.

After careful review of the record, Defendants' Motion for Partial Summary Judgment, (Doc. 38), is granted in part and denied in part.

## II.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate when the record demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

---

³ The Court's screening order has a scrivener's error: the date should be June 7, 2020, not June 6, 2020. *Compare* (Doc. 1 at 2) *with* (Doc. 2 at 8, ¶ 14).

⁴ Dunahue also filed a sur-reply, (Doc. 57). The document, which was filed without leave of Court and merely states that Defendants' Reply "Is Straight Bull Sh*t" (as written in the original), will not be considered by the Court.

(1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party." *Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 934 F.3d 799, 802 (8th Cir. 2019) (citing *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 216 (2015)).

### B. The PLRA's Exhaustion Requirement

The PLRA requires prisoners to exhaust all available administrative remedies prior to filing a § 1983 action. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003). In order to do so, prisoners must fully and properly exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action and complete the exhaustion process *before* initiating the § 1983 action. *Jones v. Bock*, 549 U.S. 199, 211, 219–20, 223–24 (2007); *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton*, 752 F.3d 1136, 1141–42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90. Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly bring a claim in a § 1983 action.

### C. ADC Administrative Directive 19-34

It is undisputed that ADC Administrative Directive 19-34 ("AD 19-34") is the administrative process for the submission and resolution of inmate problems and complaints within the ADC. (Doc. 40 at 1 ¶ 4; Doc. 40-1). AD 19-34 requires prisoners to raise their complaints through a three-step grievance procedure. (Doc. 40-1 at 1–19). First, the prisoner must file a "Step One" informal resolution within fifteen days of each incident to a designated "Problem Solver." AD 19-34 at § IV(E). The Step One informal resolution must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses." *Id.* In other words, at Step One, the prisoner must name each defendant and explain their involvement in the complaint.

Second, the prisoner must file a "Step Two" formal unit-level grievance, raising his complaint within three working days of the denial of the informal resolution. *Id.* at § IV(F). The Step Two grievance must contain "an explanation [of] why the inmate considers the informal resolution unsuccessful." *Id.* at § IV(F)(1). Notably, the prisoner may not raise new issues in his formal grievance, and issues not raised in Step One will not be considered at Step Two. *Id.* at § IV(F)(2).

Finally, the prisoner must file a "Step Three" appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Step Two decision. *Id.* at §§ IV(G). At Step Three, the prisoner must "state a reason for the appeal." AD 19-34 at § IV(G)(2). The grievance procedure cautions prisoners that they should "not list additional issues, requests, or names which were not part of the original grievance, as those issues will not be addressed." *Id.*

Moreover, the grievance procedure cautions prisoners that only certain matters may be grieved. Matters such as parole, transfers, anticipated events, and disciplinaries are not grievable. AD 19-34 § III(H)(5).

In connection with each grievable claim, the prisoner must: (1) "specifically name each individual involved;" (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *Id.* at § IV(C)(4), (D)(2), & (E)(2). The ADC's policy further cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants at *all levels* of the grievance procedure . . . their lawsuits or claims may be dismissed" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also id.* at § IV(C)(4) & (D)(2). Dunahue, then, was required to raise and pursue his claims against Defendants through all three steps of the ADC's grievance procedure.

### D.    Relevant Grievances

In their Motion for Partial Summary Judgment, Defendants argue that Dunahue failed to exhaust his administrative remedies as to any claims against Branham. (Doc. 38). Furthermore, Defendants request that Dunahue's claims be limited to: (1) the denial of his June 2020 legal mail against Starks, Avery, Culclager, and Andrews; and (2) the "denial of hygiene items to clean his living area" against Culclager and Starks. (Doc. 38 at 2). Defendants identify three relevant grievances: CU-20-00865, CU-20-00866, and CU-20-00971.

Dunahue responds that all of his claims were exhausted in Grievance CU-20-00865, and in an additional grievance not provided by the Defendants, CU-20-00877. (Doc. 42 at

5

1). Defendants reply that "Grievance CU-20-00877 was appropriately rejected as relating to a non-grieveable disciplinary matter" and, thus, did not serve to exhaust any of Dunahue's claims. (Doc. 49 at 1, ¶ 4). The Court will consider all four grievances, in turn.

### 1. CU-20-00865 (Doc. 40-2 at 6–9)

On June 7, 2020, Dunahue initiated Grievance CU-20-00865 by filing a Step One informal resolution. (Doc. 40-2 at 6). He grieved that: (1) Branham placed him in a shower stall in isolation and mishandled his legal work; (2) Avery and Andrews left him in the stall and stole his property; and (3) Avery damaged his legal documents.[5] *Id*. Dunahue's complaints apparently were not resolved informally because, the next day, he moved to the Step Two formal grievance process. *Id.*

Culclager was the decision maker at Step Two. (Doc. 40-2 at 7). She advised Dunahue that, because he had "addressed multiple issues in [his] complaint," she was limiting her response to the "legal mail" issue. *Id.* She wrote that Dunahue's property had been inventoried and placed in the restrictive housing property room. *Id.* Moreover, Avery denied touching or packing Dunahue's property, and Andrews denied having any access to

---

[5] In full, Dunahue's informal resolution for CU-20-00865 reads:

> On 6-7-2020 about 3 A.M. Sgt. Brenham of Cummins moved me to a shower stall in isolation due to a lack of Bed Space, and in violation of Law and my const. Rights. Racial slurs by Sgt. Brenham was used on 6-7-2020 as he mishandled my legal work-He said "Nigger you gone live in that shower." The Law Prohibits Sgt. Brenham to commit hate crimes. Due to be being Black, Sgt. Brenham left me to abide in a 2 ft. wide shower stall which is prescribed by ADC directives and policy. Sgt. Brenham's use of Racial Slurs proves he had malice. On 6-07-2020 at Cummins Unit- - In violation of Law & Order Lt. Avery & Dep. Warden Andrews stole my personal property and left me in a shower stall. Lt. Avery has abused his authority. Damage to my legal Documents was done by Lt. Avery on 6-7-2020.

(Doc. 40-2 at 6).

his property. *Id.* Thus, at Step Two, Culclager found Dunahue's complaint regarding his legal property to be "without merit." *Id.*[6]

Dunahue appealed to Step Three. Despite the fact that Culclager only addressed Dunahue's complaints regarding his legal mail and made no mention of Dunahue's "shower stall" complaint or Branham in her Step Two response, Dunahue stated in his appeal: "On 6/7/20 about 3:20 A.M. Warden Culclager & D/W-Andrews Consented 2 Sgt. Branham forcing me out of a cell to put another guy in it." *Id.* (errors in original).

Unlike Culclager at Step Two, the Step Three decision maker did *not* limit his response to the legal-property issue. Instead, he reviewed Culclager's Step Two response regarding Dunahue's legal property and concurred with that decision. (Doc. 40-2 at 9). He also reviewed Dunahue's appeal—about Branham forcing Dunahue from his cell and Culclager and Andrews consenting to Branham's decision—and found no merit in that appeal. *Id.*

Defendants argue that CU-20-00865 only exhausted Dunahue's claim that Avery and Andrews interfered with his legal mail on June 7, 2020, because that is the only claim

---

[6] In full, Culclager's Step Two response to CU-20-00865 reads:

> Please be advised, you have addressed multiple issues in your complaint. However, the issue that will be addressed will pertain to your legal mail. On June 7, 2020, you refused to be placed into a cell with another inmate. Therefore, you were placed on Behavior Control, and your property was placed into the Cummins Unit Restrictive Housing Property Room. Your property was inventoried and accounted for. You refused to sign the property form. On June 16, 2020, you were again placed on Behavior Control, with a property form being completed. Both documents verify you have an assortment of personal mail. Lt. K. Avery states, he has not packed nor touched your property. Deputy Warden J. Andrews states, he has not had any access to your personal property at the Cummins Unit.

(Doc. 40-2 at 7).

addressed by Culclager at Step Two. (Doc. 39 at 11). However, this argument ignores the Step Three decision maker's final merits determination, which addressed Dunahue's allegation that Culclager and Andrews "consented" to him being removed from his cell by Branham. (Doc. 40-2 at 7, 9). Although Dunahue improperly raised this issue for the first time on appeal, it is well-established that a prison official's acceptance and resolution of a procedurally-deficient grievance serves to establish proper exhaustion. *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012); *see also, e.g.*, *Radford v. Jenkins-White*, No. 2:23-CV-00227-DPM-JJV, 2024 WL 2198258, *3 (E.D. Ark. Apr. 4, 2024) *report and recommendation adopted*, 2024 WL 2194599 (E.D. Ark. May 15, 2024) (holding that when the ADC Director denied a grievance on the merits rather than reject it as procedurally flawed, the Director cured any defects).

Thus, the issue is whether Culclager and/or the Step Three decision maker reviewed and resolved Dunahue's procedurally-deficient condition-of-confinement claims against Branham, Culclager, and Andrews. On this record, viewed in a light most favorable to Dunahue, the Court holds that the Step Three decision maker did and, accordingly, that CU-20-00865 served to exhaust Dunahue's shower-stall condition-of-confinement claims against Branham, Culclager, and Andrews.

As stated above, the Court must view the grievance and the decision maker's response in a light most favorable to Dunahue and draw reasonable inferences in his favor. *Brand*, 934 F.3d at 802. By concurring with Culclager's Step Two response *and* finding no merit in Dunahue's appeal, it can reasonably be inferred that the Step Three decision maker resolved the following complaints on the merits: (1) Dunahue's complaint that, on June 7,

2020, Avery and Andrews "stole his personal property" and Avery "damaged" his legal documents; (2) Dunahue's complaint that he was removed from his cell by Branham and placed in a shower stall for 24 hours; and (3) Dunahue's complaint that Culclager and Andrews "consented" to him being removed from his cell by Branham. (Doc. 40-2 at 7, 9). These grievances correspond to the claims in Dunahue's Complaint that Avery and Andrews were involved in denying him mail for three weeks, starting on June 7, 2020 (Doc. 2-1 at 8, ¶ 16); and that Culclager and Andrews knew Dunahue was forced out of his cell and into a shower stall by Branham on June 7, 2022, but "didn't give a damn," *id.* at 8, ¶ 14. Thus, CU-20-00865 serves to exhaust those claims *only*.[7]

### 2.     CU-20-00866 (Doc. 40-2 at 10–13)

In his next grievance, CU-20-00866, Dunahue complained of several issues regarding his legal mail and access to the courts. (Doc. 40-2 at 10). As relevant to this action, he grieved that Starks was hiding legal envelopes and paper and allowing officers to refuse notary call, thus "blocking or delaying" Dunahue's communication with the court. He also complained that Culclager was aware of Starks's actions but failed to take corrective action and that Avery and Starks were not picking up legal mail. *Id.* Finally,

---

[7] Because Culclager only responded to Dunahue's claims regarding his legal mail, and Dunahue's Step Three appeal only grieved Culclager and Andrews's "consent" to him being removed from his cell by Branham, CU-20-00865 does not serve to exhaust Dunahue's claim that Avery locked him in a shower stall for 24 hours. (Doc. 2-1 at 8, ¶ 14).

Dunahue claimed the law library was denying him access to legal supplies and lawbooks.[8] (Doc. 40-2 at 10).

The Step One problem solver noted that Dunahue could request paper and envelopes directly from Starks or purchase the items from commissary. (Doc. 40-2 at 10). Dunahue appealed to Step Two because "none of [his] issue[s] w[ere] resolved." *Id.*

At Step Two, Culclager found Dunahue's grievance to be without merit. (Doc. 40-2 at 11). Specifically, Culclager advised Dunahue: "Captain K. Starks states, he personally ensures inmates housed in the Restrictive Housing area receive legal materials such as legal envelopes and writing paper. However, you have not submitted a request for these items. Therefore, your complaint is without merit." *Id.*

Dunahue appealed to Step Three, stating merely "It[']s False." *Id.* The Step Three decision maker found no merit in Dunahue's appeal and advised him to "follow the

---

[8] Grievance CU-20-00866 contained many allegations that are not relevant to this action, including claims against non-Defendants. In full, it reads:

> I continue to grieve about Capt. Starks NOT obeying ADC directives and Policy—So, Starks is mad now and he is blocking or delaying my communication with the Courts by keeping all legal envelopes and paper for my use hidden, and locked-up.[] Starks okays his lieutenants to neglect doing notary call, plus legal mail pick up[.] [B]y policy captains, lieutenants too have to do (5) days a week—East Bldg. Captain Kenneth Wayne Starks & Wardens of Cummins, Lt. Avery, Lr. Crofford, Mail Room Personnel and Major Daniel don't do legal mail pick-up nor notary call, which violates my rights to communicate w/ the media, courts, and public officials.
>
> Aundrea Culclager & Directors—Payne, Reed & Straughn knows that Cpt. Starks instead of the law library is controlling legal supplies I need but I can't get. The Program Coordinator won't allow me to get lawbooks the law library carries and ADC policy says Restr. Housing can check out.

(Doc. 40-2 at 10).

guidelines in obtaining your needed legal supplies by putting in a request for them." *Id.* at 13.

Defendants admit that, when viewed most favorably to Dunahue, Grievance CU-20-00866 exhausts Dunahue's claims against Starks, Avery, Culclager, and Andrews for interfering with his legal mail through mid-June 2020 while he was housed in behavior control. (Doc. 39 at 11). Accordingly, CU-20-00866 serves to exhaust Dunahue's claim that Starks, Avery, Culclager, and Andrews either interfered with his legal mail or knew his legal mail was being interfered with and failed to take corrective actions.

### 3. CU-20-00877 (Doc. 42 at 2–3)

In Grievance CU-20-00877, Dunahue first complained that, on June 7, 2020, Avery, Andrews, and Branham placed him in behavior control even though he did not "meet the criteria to be put on behavior control." (Doc. 42 at 2). Among other complaints, Dunahue further alleged that Avery and Starks did not provide him "cleaning supplies, nail clippers, a shaving razor, and a shower."[9] The grievance was rejected at Step One and Step Two as

---

[9] Like his previous grievances, there are many complaints in CU-20-00877 that are not relevant to the underlying lawsuit. In full, Dunahue's informal resolution states:

> An inmate shall be placed on Behavior Control for any assaultive, disruptive or self injurious behavior—According to the ADC administrative directive on "Behavior Control." On 6/7/2020 Lt. Avery & Dep. Warden Andrew & Sgt. Branham placed me on Behavior Control without me doing something to meet the criteria to be put on behavior control. And when I came off . . . the Behavior Control policy requires . . I Should've been given cleaning supplies, nail clippers, a shaving razor, and a shower—but Lt. Avery Lt. Crofford & Cat. Starks did not Provide me either of those (4) accommodations on 6-10-2020. And the Behavior Control Policy says officers on Avery's and Crofford's shifts should've done checks on me once every 30 minutes but they didn't. Nobody did rounds in isolation on 6/7/2020–6/10/2020 at Cummins in accord to ADC directive. A major violation of Policy occurred when D/W-Andrews, Lt. Avery & Sgt. Branham put me on behavior control – because it was used as corporal punishment on me for me saying I'm afraid to be in a cell with inmates who have COVID-19 and smoke dope." I/M J. Hart in

11

being "non-grievable," because it concerned a "disciplinary matter." *Id.* at 2–3. The Step Two rejection occurred on June 16, 2020, and the grievance was stamped twice with: "FAILURE TO FOLLOW POLICY HAS RESULTED IN A REJECTION FOR THIS APPEAL AND MARKS THE END OF THE APPEAL PROCESS." *Id.*

Defendants argue that the grievance was appropriately rejected because it concerned a disciplinary matter, in violation of the ADC grievance procedure. (Doc. 49 at 1, ¶ 4). They also point out that, after receiving the rejection notice, Dunahue was still within the fifteen-day window to grieve any of the non-disciplinary matters he raised in CU-20-00877. *Id.* at 2, ¶ 9.

The ADC grievance procedure clearly states that "disciplinaries" are not grievable. AD 19-34 § III(H)(5), (Doc. 40-1 at 3). In CU-20-00877, Dunahue's first complaint was that, on June 7, 2020, he was placed on behavior control without justification. (Doc. 42 at 2). According to the disciplinary records, on June 7, 2020, Dunahue refused to accept a cellmate despite three direct orders from Branham. (Doc. 42 at 40). Branham, therefore, charged Dunahue with two "failure to obey" code violations and placed him on behavior control. *Id.* Thus, the first raised complaint in CU-20-00877 was directly related to a non-grievable disciplinary matter, and it was not improper for ADC officials to reject it for failing to comply with procedure.

---

isolation quiet cell No. 12 lives in a 1-man cell because he prefers to, but discrimination by employees is prohibited by the ADC.

(Doc. 42 at 2).

Dunahue did, however, raise grievable issues in CU-20-00877—namely, that he was not provided a shower and grooming supplies on June 10, 2020. (Doc. 42 at 2). Dunahue was made aware of the rejection of the grievance on June 16, 2020. *Id.* at 3. Considering Step One informal resolutions must "be completed and submitted within 15 days after occurrence of the incident," Dunahue still had several days to file a new grievance raising this non-disciplinary complaint. *See* AD 19-34 § IV(E)(1), (Doc. 40-1 at 6). Thus, despite the rejection of CU-20-00877, the grievance procedure was still available for Dunahue's use. Accordingly, CU-20-00877 was properly rejected on procedural grounds and cannot be used to exhaust any claims. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (holding that failure to adhere to prison procedural rules renders grievances unexhausted).

### 4. CU-20-00971 (Doc. 40-2 at 14–17)

Dunahue initiated the final relevant grievance, CU-20-00971, by filing an informal resolution on July 7, 2020. He complained generally of unsanitary conditions and the lack of grooming services in punitive isolation. (Doc. 40-2 at 14). More specifically, he complained that Culclager and Starks denied his requests to have staff pass out "disinfectants, paper towels and cleansers" on a daily basis and to hire an extermination company for the rodent and insect problem. *Id.* [10]

---

[10] In full, Dunahue's Step One informal resolution in CU-20-00971 reads:

D.O.C. Regulations promotes sanitary, safe and rehabilitative confinement; however Wardens Culclager & Captain Starks have continuously denied my requests for them to get somebody or some company to exterminate the rodents, roaches, bugs and spiders that are comings out of the drains in the floor of East isolation; Requests for them to have inmate-Janitors Mop and Clean Cell #13 East isolation seven days a week; Request for them to have staff to daily pass out disinfectants, paper towels and cleansers to me so to clean the cell I am in; And requests they stop putting inmates together in one cell that are classified as threats to another's safety. None of ADC's directives and/or Policies over

13

The grievance was rejected at Step One with the written explanation that, "according to policy[,] cell clean-up is done Monday, Wednesday and Friday." (Doc. 40-2 at 14). Dunahue appealed to Step Two. Culclager found the complaint without merit. (Doc. 40-2 at 15). Specifically, Culclager informed Dunahue that (1) they contracted with Presto-X to spray for pests and (2) Dunahue is provided with chemicals for cleaning his own living area. *Id.* Culclager also noted that the "issue of cleaning has been addressed with you in multiple complaints." *Id.* Dunahue appealed his grievance to Step Three. On September 25, 2020, the Director affirmed Culclager's response and found Dunahue's grievance without merit.

Defendants concede that CU-20-00971 serves to exhaust Dunahue's claim that Culclager and Starks denied him cleaning supplies to sanitize his living conditions. (Doc. 39 at 11). They argue, however, that CU-20-00971 exhausts only Dunahue's claims from June 22, 2020—fifteen days prior to the July 7 informal resolution—through June 28, 2020—the last day Dunahue alleges he was in behavior control.[11] *Id.* at 11–12, (Doc. 40-2 at 2, ¶ 12).

---

punitive isolation, housing of maximum security level inmates, cleaning of inmates living environment, barber and grooming for AD-SEG., Step Down Program; and Unit cleaning are followed by Cummins Warden Cuclager, Cpt. Starks & Major Daniel—so I, and alot of other guys not serving punitive-ISO. Sentences have been held in punitive-ISO. Unsanitary conditions w/o access to barber service, cleaning supplies and rehabilitative programs[.] Therefore I have legit ground to sue Culclager.

[11] Dunahue's claims in this action are necessarily defined and limited by the allegations in his Complaint, and the allegations on which he was allowed to proceed after the Court's 28 U.S.C. § 1915A screening. In his Complaint, Dunahue alleges that, on June 7, 2020, he was placed on behavior control for three weeks. (Doc. 2-1 at 8). And, while in behavior control, he did not have "commonly used hygiene items." *Id.* Although Dunahue goes on to complain generally about the unsanitary conditions he suffered during his *entire* stay in Cummins's punitive isolation unit—from December 2019 to October 2021, *id.* at

The Court limited Dunahue's claims to June 7, 2020, and the three weeks following that Dunahue was in behavior control.[12] *See* (Doc. 1 at 2–3) ("Dunahue was then transferred to behavior control for three weeks, where he was deprived of clothes, a mattress, hygiene items, and mail."). Fifteen days prior to July 7, 2020, the date of Dunahue's grievance, is June 22, 2020. Because Dunahue did not specify in his grievance whether he was complaining about his time in behavior control, specifically, or punitive segregation, generally, the Court agrees with Defendants that, according to the ADC grievance procedure, CU-20-00971 serves to exhaust Dunahue's conditions-of-confinement claim that Starks and Culclager did not provide him with personal cleaning supplies for his cell from June 22, 2020, to June 29, 2020.

Nothing in CU-20-00865, CU-20-00866, or CU-20-00971, however, exhausts Dunahue's remaining conditions-of-confinement claims against Defendants for being transferred to behavior control for three weeks. Likewise, the aforementioned grievances do not exhaust Dunahue's corrective-inaction claims against Andrews, Culclager, and Starks related to Dunahue's placement in behavior control. In other words, Dunahue failed to raise or exhaust in CU-20-00865, CU-20-00866, and CU-20-00971 his claim that Andrews, Culclager, and Starks failed to correct his placement in behavior control for three

---

9, ¶ 17—the Court only severed and served Dunahue's complaints regarding his three weeks in behavior control. (Doc. 1 at 2–5).

[12] Defendants reference June 28, 2020, as the date for all claims to be completed; however, Dunahue was allegedly placed in the shower stall on June 7, where he stayed for 24 hours. (Doc. 2 at 8). Thus, Dunahue's time in behavior control did not begin until June 8, 2020. Twenty-one days after June 8, 2020, is June 29, 2020.

15

weeks. Furthermore, Dunahue failed to exhaust his claim that Andrews failed to take any corrective action to get Dunahue cleaning supplies for his cell.

### E. Dunahue's Fourth Motion for Appointment of Counsel

There is one last matter pending before the Court: Dunahue's fourth Motion for Appointment of Counsel. (Doc. 81). The Court previously weighed the relevant factors and determined that Dunahue's claims do not appear legally or factually complex, and he is capable of prosecuting his claims without appointed counsel. (Doc. 22). Dunahue's perfunctory one-page Motion provides no reason for the Court to revisit that decision. Accordingly, Dunahue's fourth Motion for Appoint of Counsel, (Doc. 81), is DENIED.

## III. CONCLUSION

Of the four grievances identified by the parties, Dunahue received a response on the merits to only three: CU-20-00865, CU-20-00866, and CU-20-00971. The fourth grievance, CU-20-00877, was appropriately rejected pursuant to ADC policy.

In the three fully exhausted grievances, Dunahue exhausted the following claims:

A. Branham placed Dunahue in a shower stall in isolation for twenty-four hours on June 7, 2020, (Doc. 2-1 at 8; Doc. 40-2 at 6–9);

B. Culclager and Andrews "consented" to Dunahue being placed by Branham in a shower stall in isolation for twenty-four hours on June 7, 2020, (Doc. 2-1 at 8, ¶ 14; Doc. 40-2 at 7, 9);

C. Avery, Andrews, Starks, and Culclager did not give Dunahue his mail for the three weeks he was in behavior control, starting on or around June 7, 2020, (Doc. 2-1 at 8, ¶ 16; Doc. 40-2 at 6–7, 9; Doc. 40-2 at 10–13); and

  D. Starks and Culclager denied Dunahue cleaning supplies from June 22, 2020, to June 29, 2020, (Doc. 2-1 at 8, ¶ 16; Doc. 40-2 at 14–17).

Nothing in CU-20-00865, CU-20-00866, nor CU-20-00971 exhausts Dunahue's remaining claims that: Avery made him stay in a shower stall for twenty-four hours, (Doc. 2-1 at 8, ¶ 14); and, while he was in behavior control, he was denied clothes, a shower, and a mattress, *id.* at ¶ 16. To the extent Dunahue may have alleged a claim about being *placed* in behavior control for three weeks, he also failed to exhaust that claim.

  IT IS THEREFORE ORDERED THAT:

  1. Defendants' Motion for Partial Summary Judgment, (Doc. 38), is GRANTED in part and DENIED in part.

  2. Dunahue may PROCEED with the following claims: (1) his claim that, on June 7, 2020, Branham placed him a shower-stall in isolation for twenty-four hours; (2) his claim against Culclager and Andrews for "consenting" to his twenty-four-hour placement in a shower stall on June 7, 2020; (3) his claim that Avery, Andrews, Starks, and Culclager denied him access to mail during his three weeks on behavior control; and (4) his claim that Starks and Culclager denied him cleaning supplies from June 22, 2020, to June 29, 2020.

  3. All other claims are DISMISSED without prejudice based on Dunahue's failure to exhaust available administrative remedies.

  4. Dunahue's fourth Motion for Appointment of Counsel, (Doc. 81), is DENIED.

SO ORDERED this 5th day of March, 2025.

_____
UNITED STATES MAGISTRATE JUDGE